**UNITED STATES of America,**

v.

**Branch D. KLOESS, Defendant.**

**No. CR.00–46–N.**

United States District Court,
M.D. Alabama,
Northern Division.

May 17, 2000.

William H. McAbee, II, U.S. Attorney's Office, Montgomery, AL, for U.S.

Stephen Roger Glassroth, Joseph Peter Van Heest, Glassroth & Associates, Montgomery, AL, for Branch D. Kloess.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

## I. INTRODUCTION

This cause is before the court on an Objection to the Magistrate Judge's Recommendation Denying Motion to Dismiss Indictment for Failure to Establish a Violation of the Charged Offense, filed by the Defendant Branch Kloess ("Kloess") on May 15, 2000.

The Magistrate Judge has recommended that the Defendant's Motion to Dismiss the Indictment be denied. For the reasons to be discussed, the court finds that this Recommendation is due to be REJECTED.

## II. STANDARD OF REVIEW

A district court may refer a motion to dismiss an indictment to a United States Magistrate Judge for a recommendation. 28 U.S.C. § 636(b)(1)(B). The district judge must conduct a de novo review of the portions of the Magistrate Judge's recommendation to which a party has objected. *Id.*

## III. FACTS

Defendant Kloess is an attorney who has been indicted on two counts: conspiracy and aiding and abetting another to knowingly and willfully engage in misleading conduct toward other persons with the intent to hinder, delay, and prevent the communication to a judge of the United States of information relating to the commission or possible commission of a federal offense (felon in possession of a firearm), and a violation of the conditions of probation of Gene Easterling, by concealing Gene Easterling's arrest and conviction for possessing a firearm, in violation of 18 U.S.C. § 1512(b)(3).

Kloess represented Gene Easterling when he was convicted of a felony in federal court and placed on probation. While on probation, Easterling was stopped by the police for a traffic offense and a pistol was found in his vehicle. He gave the police a driver's license he had obtained in the assumed name of Craig Wallace, and he was charged under that name with possession of a firearm without a permit.

It is alleged in the indictment that Kloess wrote a letter to a Montgomery Municipal Court Judge stating that he represented Craig Wallace and that it was the intent of Craig Wallace to plead guilty in absentia to a charge of possession of a firearm without a permit. It is further alleged that Kloess executed an affidavit giving notice that Craig Wallace intended to enter a guilty plea through his attorney, Kloess. The indictment in this case also states Kloess knew that the true identity of Craig Wallace was Gene Easterling, and that Kloess made this misrepresentation as to Easterling's identity with the intent to hinder, delay and prevent communication to a United States district court judge of information relating to the commission or possible commission by Gene Easterling of a federal firearms offense and a violation of the conditions of Easterling's probation in federal court.

## IV. *DISCUSSION*

Kloess has moved for dismissal of the indictment against him on the ground that the charges against him do not state a crime. Kloess has filed an Objection to the Recommendation of the Magistrate Judge that his Motion to Dismiss on this ground be denied.

Title 18, section 1512 of the United States Code, the statute which Kloess is charged with violating, provides punishment for

(b) Whoever knowingly ... engages in misleading conduct toward another person with intent to

...

(3) hinder, delay, or prevent the communication to a ... judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation ...

Kloess has pointed to the fact that there is a provision in the same chapter of the statute, however, which states: "This chapter does not prohibit or punish the providing of lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding." 18 U.S.C. § 1515(c). This provision has been termed a "safe harbor" provision by the Third Circuit. *See United States v. Davis*, 183 F.3d 231, 248 (3rd Cir.1999).

Under Kloess' interpretation of the safe harbor provision in § 1515(c), it is the Government's burden to negate, as an element of the offense in § 1512(b)(3), that Kloess was providing lawful, bona fide, legal representation services. The Government argues that § 1515(c) is an affirmative defense and that the burden is on a defendant to prove the defense. The issue of whether § 1515(c) is an affirmative defense which the defendant must prove, or whether the negation of § 1515(c) is an element of the offense in § 1512(b)(3) which the Government must prove, appears not only to be a question of first impression in this circuit, but it also appears that no federal district court or court of appeals has addressed this issue.

The Magistrate Judge in this case has recommended that the indictment not be dismissed, but that Kloess' argument should be raised again in a motion for a directed verdict of acquittal. In so doing, the Magistrate Judge relied primarily on *United States v. Steele*, 147 F.3d 1316 (11th Cir.1998)(*en banc*).

In *Steele*, the *en banc* court held that an indictment of a pharmacist for unlawfully dispensing controlled substances need not aver that it was done outside of the scope of professional practice. *Id.* at 1320. In doing so, the court overruled an earlier former Fifth Circuit panel opinion [1] which had concluded that a professional practice exception which applied to pharmacists was an essential element and, therefore, had to be pleaded and proved by the Government. *Id.* at 1317. The statute which Steele was charged with violating was 21 U.S.C. § 841(a)(1). Another section of the same subchapter, 21 U.S.C. § 822(b), using terms defined in 21 U.S.C. § 802(21), provides an exception which permits pharmacists to dispense controlled substances in the course of professional practice.

In reaching the conclusion that the indictment need not aver that the dispensing by the defendant was done outside the scope of professional practice, the decision in *Steele* relies on a statutory provision which specifically states that the Government need not negate the course of professional practice exception: "It shall not be necessary for the United States to negative any exemption or exception set forth in this subchapter in any ... indictment ... or in any trial ... and the burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit." *Steele*, 147 F.3d at 1318 (quoting 21 U.S.C. § 885(a)(1)). Were there a similar provision in this case, this court would be

---

1. *United States v. Outler*, 659 F.2d 1306 (5th      Cir. Unit B 1981).

persuaded by *Steele* that the correct interpretation of the interaction of § 1512(b)(3) and § 1515(c) is that § 1515(c) is an affirmative defense. There is, however, no such provision in the statute at issue here, and that makes this case quite different from *Steele*. Accordingly, while the court will look to rules of statutory construction discussed in *Steele*, the court declines to adopt the reasoning of the Magistrate Judge that there is no principled difference between the exception at issue in *Steele* and the safe harbor provision at issue in the instant case.

In the absence of binding authority on the interpretation of § 1515(c) as it relates to an alleged violation of § 1512(b)(3), this court must interpret the relevant statutory provision beginning with the language of § 1515(c) itself. *In re Griffith*, 206 F.3d 1389, 1393 (11th Cir.2000)(*en banc*). Where the language of Congress is clear and unambiguous, the court presumes that Congress said what it meant and meant what it said. *Steele*, 147 F.3d at 1318. The Eleventh Circuit has explained that in interpreting a statute, courts give the words used in the statute their ordinary meaning, and that courts also use interpretative tools, or "canons of construction," in interpreting statutes. *In re Griffith*, 206 F.3d at 1393.

■ In this case, as noted above, the safe harbor provision states that the statute "does not prohibit or punish" the providing of "lawful, bona fide, legal representation services." *See* 18 U.S.C. § 1515(c). While the plain language of this provision clearly excepts from punishment the providing of lawful, bona fide legal services, it does not clearly and unambiguously state whether the provision was intended by Congress to be an element of the offense or an affirmative defense. This court must, therefore, apply the applicable canons of construction.

■ The *Steele* court, relying on United States Supreme Court precedent, described two rules of statutory construction.

One rule of statutory construction is that an indictment based on a general provision defining the elements of the offense does not have to negate an exception made by a distinct clause. *Steele*, 147 F.3d at 1319 (citing *McKelvey v. United States*, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301 (1922)). Another rule is that where an exception is incorporated in the enacting clause of a criminal statute, the burden is on the prosecution to prove that the defendant is not within the exception. *Id.* (citing *United States v. Vuitch*, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971)).

■ Section 1515(c) is better described as being an exception "incorporated in the enacting clause" of the criminal statute, rather than being part of a distinct clause. Section 1515(c) is, of course, in a separate numerical section from § 1512. It also is, however, necessarily incorporated into § 1512 because it is contained within a section entitled "Definitions for certain provisions; general provision." This section defines relevant terms which are used in earlier sections of the chapter. In the final sub-part of the definition section, it is stated that the chapter does not "prohibit or punish" the providing of "lawful, bona fide, legal representation services." Taking § 1512(b)(3) and § 1515(c) together, as is dictated by the placement of § 1515(c) in the general definition section, § 1515(c) can be construed as stating that certain conduct, that is, providing lawful, bona fide legal representation services, is definitionally not engaging in "misleading conduct" with the intent to "hinder, delay, or prevent communication to a judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation" under § 1512(b). In other words, this court finds that the reasonable interpretation of § 1515(c) is that Congress did not say that otherwise illegal conduct is excused because the person is providing lawful, bona fide legal services, but instead said that conduct is not illegal in the first place, that is, it does not violate

§ 1512(b)(3), if it is the providing of lawful, bona fide legal services.

This court's interpretation of a § 1515(c) as a definitional limitation on § 1512 is also consistent with the United States Supreme Court's analysis in *United States v. Cook*, 17 Wall. 168, 84 U.S. 168, 21 L.Ed. 538 (1872). In *Cook*, the Court stated

Cases have also arisen, and others may readily be supposed, where the exception, though in a subsequent clause or section ... is nevertheless clothed in such language, and is so incorporated as an amendment with the words antecedently employed to define the offence, that it would be impossible to frame the actual statutory charge in the form of an indictment with accuracy, and the required certainty, without an allegation showing that the accused was not within the exception contained in the subsequent clause, section, or statute. Obviously such an exception must be pleaded, as otherwise the indictment would not present the actual statutory accusation, and would also be defective for want of clearness and certainty.

*Id.* at 174–75.

Another canon of construction applied by courts which supports this court's interpretation of § 1515(c) is the principle that when Congress knows how to say something and chooses not to do so, its silence is controlling. *See Alanis–Bustamante v. Reno*, 201 F.3d 1303, 1311 (11th Cir.2000)(citing *In re Haas*, 48 F.3d 1153, 1156 (11th Cir.1995)(citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994))). It is clear that Congress knew how to specifically state that the professional practice exception which applied to pharmacists dispensing controlled substances, discussed in *Steele*, did not place a pleading

or proof requirement on the Government. *See Steele*, 147 F.3d at 1318. The absence of such a clear statement in the obstruction of justice statute at issue in this case is significant. Had Congress chosen to prevent § 1515(c) from placing a pleading or proof requirement on the Government, it knew how to do so, having done so in 1970 with the passage of 21 U.S.C. § 885(a)(1), and could have done so when the obstruction of justice chapter was amended to add § 1515(c) in 1986. Although the statutory provisions addressed in *Steele* and the statutory provisions at issue in this case are not located within the same statute, the Eleventh Circuit has indicated that it is appropriate to look at language in a separate statute in applying the principle that Congress' silence is controlling if it is clear that Congress knew how to say something, but chose not to do so. *See In re Haas*, 48 F.3d 1153 (11th Cir.1995).[2]

In addition to these canons of construction, "legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity." *In re Griffith*, 206 F.3d at 1393 (quoting *Burlington Northern R. Co. v. Oklahoma Tax Com'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987)). While the court has found that the reasonable interpretation of § 1515(c) is that it is an element of the offense in § 1512, the court acknowledges that § 1515(c) might be read, and has been read by the Government in this case, to be an affirmative defense.

Kloess has pointed out that there is a statement in the Congressional Record that

The Subcommittee on Criminal Justice has received complaints of prosecutors harassing members of the defense bar.

---

**2.** The Eleventh Circuit has overruled in part the holding in *In re Haas*, 48 F.3d 1153 (11th Cir.1995). *See In re Griffith*, 206 F.3d 1389 (11th Cir.2000) (*en banc*). In so doing, however, the Eleventh Circuit still remarked that its application of the canon of construction to a bankruptcy statute by comparing language

in that statute to language used in the tax code was a "plausible interpretation," but adopted a new interpretation which it found to be the more reasonable interpretation. *Id.* at 1395. Therefore, the Eleventh Circuit has indicated that looking to separate statutes is still an acceptable tool of construction.

Vigorously and zealously representing a client, however, is not a basis for charging an offense under the obstruction of justice chapter. Section 50(2) therefore amends 18 U.S.C. 1515 to provide specifically that the lawful, bona fide provision of legal representation services does not constitute an offense under any of the obstruction of justice offenses in 18 U.S.C. ch. 73.

132 Cong. Rec. H11291–01 (Oct. 17, 1986). The emphasis on "charging" an offense under the statute is significant to this court, for it focuses on prohibiting the bringing of charges, not defending charges once they have been brought.

The importance of the focus on "charging" an offense is demonstrated by a discussion in a Third Circuit opinion. In *United States v. Davis*, 183 F.3d 231, 248 (3rd Cir.1999), the court pointed out that "a lawyer's instruction to a client not to speak to potential government witnesses, including government investigators, would also apparently constitute witness tampering by this theory, except that the statute excludes lawful, bona fide legal services in connection with or anticipation of an official proceeding." In other words, if it were not for the exception in § 1515(c), attorneys could be indicted for counseling their clients to assert their Fifth Amendment rights. Therefore, even if § 1515(c) could be read as merely providing a defense, rather than stating an element of the offense, it is logical that by enacting § 1515(c), Congress intended to place the burden on the Government to charge in the indictment that the attorney was not acting within the scope of bona fide legal representation, rather than to allow an attorney to be charged with a crime for the mere fact of providing such legal advice, and then require the attorney to defend himself against the charge at a criminal trial by demonstrating that he was providing bona fide legal services.

The statement of Congress' motivation to protect attorneys from "harassment" by making it clear that certain conduct is not to be subject to "charging" an offense under the statute causes this court to conclude that any ambiguity in the interpretation of § 1515(c) is to be resolved in favor of finding that the negation of § 1515(c) is intended to be an element of an offense when the facts alleged in the indictment indicate that it is an attorney against whom charges are being brought and that the charges are based on actions taken by the defendant in his role as an attorney representing a client.

Finally, the court also finds that the canon of strict construction of criminal statutes, or rule of lenity, supports an interpretation that the negation of § 1515(c) is intended to be viewed as an element of § 1512(b)(3). The rule of lenity "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). "[W]here there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." *United States v. McLemore*, 28 F.3d 1160, 1165 (11th Cir.1994). Although this court finds that the reasonable interpretation of § 1515(c) is that it places conduct which falls within the safe harbor outside of the scope of conduct which is illegal, as stated above, the court acknowledges that § 1515(c) might also be read, and has been read by the Government in this case, as merely providing a defense to conduct which is illegal. Even assuming there is an ambiguity, because the construction of § 1515(c) as being an element of the offense most favors the defendant, it is the construction which must be adopted under the rule of lenity.

This court, applying canons of construction, has determined that the negation of § 1515(c) is an element of an offense under § 1512. Even acknowledging that there could be more than one reasonable interpretation of § 1515(c), this court has also determined that both Congressional intent and the rule of lenity dictate that § 1515(c) be read as an element of the offense under

§ 1512. Accordingly, the court declines to adopt the Recommendation of the Magistrate Judge and instead concludes that § 1515(c) is an element of the offense charged in this case.

## V. CONCLUSION

The court points out that its holding in this case by no means gives free reign to attorneys to violate the law. It merely places the burden on the Government, as Congress intended, to seek an indictment against an attorney, based on conduct of the attorney in representing a client, only when it is willing to accept the burden of proving that those acts are outside the scope of lawful, bona fide representation. If that is the case, then the attorney can, and will, suffer the full consequences of having committed what will then be proven to have been a crime. If the government is willing to accept that burden here, it is free to seek a superceding indictment against the defendant.

Because this court finds that the *Steele* decision does not govern this case, and instead finds that the negation of 18 U.S.C. § 1515(c) must be pleaded as an element of the offense charged, the court finds that the Recommendation of the Magistrate Judge is due to be REJECTED. Accordingly, the court also finds that the indictment in this case, which fails to aver that Kloess was not providing lawful, bona fide, legal representation services when he committed the acts alleged, is due to be DISMISSED without prejudice.